**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DEBBIE L. MASSEY, ) | |
| ) | CASE NO.     1:07-cv-792 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Debbie L. Massey ("Massey") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Massey's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

## I. Procedural History

On August 22, 2003, Massey filed an application for POD, DIB and SSI alleging a disability onset date of June 1, 1990 and claiming that she was disabled due to mental impairments.[1] Her application was denied initially and upon reconsideration. Massey timely requested an administrative hearing.

On December 20, 2005, Administrative Law Judge Joan G. Knight ("ALJ") held a hearing during which Massey, represented by counsel, testified. Mr. Rosenthal testified as the vocational expert ("VE"). On June 27, 2006, the ALJ found Massey was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Massey filed an appeal to this Court.

On appeal, Massey claims the ALJ erred by: (1) finding that Massey can perform simple, unskilled work; (2) failing to address the opinions of several non-treating medical sources; and (3) failing to find that Massey needed to elevate her leg while seated.

## II. Evidence

*Personal and Vocational Evidence*

Born on May 9, 1972 and age thirty-three (33) at the time of her administrative hearing, Massey is a "younger" person. *See* 20 C.F.R. § 404.1563(c). Massey has a high school education, but she attended special classes. Massey has past relevant work as a fast food cook, stock clerk, and kitchen helper.

---

[1] At the hearing, Massey through counsel, moved to amend the alleged onset date to June 1, 1997; the motion was sustained. (Tr. 19.)

2

*Medical Evidence*

On October 13, 1997, clinical psychologist, Richard Davis, Psy.D., examined Massey at the request of the State Agency. (Tr. 169-74.) Dr. Davis opined that Massey was oriented to person, place, time, and situation and presented with an appropriate effect. (Tr. 173.) Dr. Davis reported that Massey "was able to care for her personal needs and presented a decent enough appearance ... [but] may have some difficulty relating satisfactorily to other people." *Id*. Massey reported no difficulty working with fellow co-workers, but reported some difficulty with people in authority because she had did not always understand what was expected of her. *Id*. On intelligence testing, Massey had a verbal IQ score of 75, performance IQ score of 69, and a full scale score of 72; Dr. Davis assessed Massey as functioning within the lower end of the borderline range. (Tr. 171, 173.) Dr. Davis concluded that Massey had limited intellectual capability with a limited ability to think logically, use common sense, and limited judgment. (Tr. 173.) However, he felt that these factors, in and of themselves, constituted a minimal factor in Massey's employment prognosis. *Id*. (Tr. 173.) He ascribed Massey a global assessment of functioning ("GAF") score of 60.[2]

On October 29, 1997, State Agency reviewing psychologist, Harry Eisel, Ph.D., reviewed the medical evidence and completed a Psychiatric Review Technique form. (Tr. 175-87.) Dr. Eisel's medical disposition was based on "Mental Retardation and Autism" as contained in Listing 12.05. (Tr. 179.) Dr. Eisel assessed Massey as having slight restrictions in activities of

---

[2] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers or co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Ass'n, 4th ed. revised, 2000).

daily living, and moderate restrictions in maintaining social functioning and concentration, persistence, and pace. (Tr. 175-87.) Dr. Eisel concluded that Massey was capable of understanding and remembering simple, multiple-step instructions; maintaining persistence and concentration for simple tasks; completing a normal work week; responding appropriately to supervisors and co-workers; and dealing with changes in a routine work setting. (Tr. 177.)

Massey sought recurrent treatment at MetroHealth Medical Center. Outpatient notes indicate examinations of Massey in April, May, and June of 2002 for a left foot ulcer. (Tr. 450-53.)

On August 13, 2002, the hospital admitted Massey for three days with left lower extremity cellulitis.[3] (Tr. 192-205.) Massey responded positively to IV medication treatment and was discharged with instructions to complete a two-week regimen of antibiotics. (Tr. 196.)

On April 7, 2003, Massey complained of shortness of breath. (Tr. 469.) A chest CT scan suggested pulmonary venous congestion and moderate sized pericardial effusion. *Id*. On April 9, 2003, the hospital admitted Massey for five days due to complaints of shortness of breath. (Tr. 206-41.) Attending physicians diagnosed congestive heart failure, primary cardiomyopathy, hypertension, diabetes mellitus, and asthma. (Tr. 206.)

Treatment notes from July 3, 2003 show Massey received treatment for recurrent left lower extremity swelling. (Tr. 389.) Treatment notes from August 18, 2003, state that Massey's chronic left foot ulcer remained unchanged. (Tr. 378.)

On October 10, 2003, physicians documented 4+ pitting edema in Massey's left leg, 3+

---

[3] Attending physicians also noted diagnoses of diabetes mellitus, hypertension, and hypercholesterolemia. (Tr. 195.)

4

edema in her right leg, and a continuing small plantar ulcer on the right first toe.  (Tr. 366.)

On November 13, 2003, Willa Caldwell, M.D., reviewed the medical evidence at the State Agency's request.  (Tr. 242-46.)  Dr. Caldwell opined that Massey occasionally could lift and/or carry 20 pounds, frequently could lift and/or carry 10 pounds, and could stand, sit, or walk about six hours in an eight-hour workday.  (Tr. 243.)  Massey could never balance, but occasionally could climb ramps, stairs, ladders, ropes, and scaffolds.  (Tr. 244.)  Massey also should not be exposed to extreme cold, heat, and noise.  (Tr. 245.)

On December 4, 2003, Deborah Koricke, Ph.D., performed a psychologist consultation at the State Agency's request in November 2003.  (Tr. 250-55.)  On intelligence testing, Massey received a verbal IQ score of 69, a performance IQ score of 65, and a full scale IQ score of 65 (Tr. 252-53.)  Massey demonstrated appropriate behavior, but was rather immature and developmentally delayed.  (Tr. 251.)  She was alert with an adequate memory, but had limited insight and judgment into her situation.  (Tr. 252.)  Dr. Koricke diagnosed phonological disorder and mild mental retardation.  (Tr. 251, 253.)  She concluded that Massey had good ability to relate to fellow co-workers and supervisors with clear developmental delays; had limited ability to understand and follow instructions due to mild mental retardation; had no significant limitation in her ability to maintain attention; and was limited in her ability to withstand stress and pressure of day-to-day work activity.  (Tr. 254.)

On December 9, 2003, Dr. Koricke, after receiving Dr. Davis's 1997 evaluation and IQ scores, changed her diagnosis from mild mental retardation to borderline intellectual functioning.  (Tr. 248-49.)

On January 6, 2004, Cynthia Nickless, Ph.D., reviewed the medical evidence at the State

Agency's request.  (Tr. 256-71.)  Dr. Nickless noted that Massey suffers from borderline intellectual functioning.  She opined that Massey has mild difficulties in maintaining social functioning and is moderately limited in both her activities of daily living and her ability to maintain concentration, persistence, or pace.  (Tr. 260, 266.)  Dr. Nickless found no repeated episodes of decompensation of an extended duration.  *Id.*  Dr. Nickless found Massey was markedly limited in her ability to understand, remember and carry out detailed instructions.  (Tr. 269.)  She further found that Massey was moderately limited in the following areas: her ability to remember locations and work-like procedures; her ability to understand, remember and carry out very short and simple instructions; her ability to maintain attention and concentration for extended periods; her ability to sustain an ordinary routine without special supervision; her ability to make simple work-related decisions; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and her ability to set realistic goals or make plans independently of others.  (Tr. 269-270.)  Dr. Nickless concluded that Massey was able to understand and carry out one to two-step work tasks.  (Tr. 271.)

On February 5, 2004, Massey received treatment for her right first toe ulcer and was diagnosed with obstructive sleep apnea, which required use of a CPAP machine.  (Tr. 278-79.)

On March 19, 2004, Massey reported that she had no shortness of breath after walking multiple blocks and going up at least two flights of stairs.  (Tr. 289.)

On June 4, 2004, David Rath, M.D., reviewed the medical records and affirmed Dr. Caldwell's November 13, 2003 opinion.  (Tr. 246.)

On June 11, 2004, Robert Gaffrey, Ph.D., also reviewed the medical records and affirmed Dr. Nickless's assessment dated January 6, 2004.  (Tr. 271.)

On March 7, 2005, Massey was hospitalized for two days for left leg swelling and infection. (Tr. 542-53.)

On June 16, 2005, Massey was readmitted to MetroHealth for fourteen days for osteomyelitis of the left ankle and foot. (Tr. 554-674.) Hospital personnel drained Massey's left ankle abscess and instructed her to place her left leg in a short-leg splint. (Tr. 656-57.) After a course of antibiotics in the hospital, Massey was transferred to a nursing home for approximately four weeks of rehabilitation. (Tr. 816-937, 1192-1363.)

*Hearing Testimony*

At the hearing, Massey testified to the following. She suffered from recurrent leg infections that cause swelling in her legs from sitting. (Tr. 1378). She wore support hose for her condition and needed to elevate her legs after fifteen to twenty minutes of sitting. (Tr. 1378-79.)

Massey also testified that she had been in a nursing home for four weeks to rehabilitate her legs. (Tr. 1381.) The ALJ stated that he had no information regarding Massey's June 2004 ankle surgery and subsequent nursing home treatment. (Tr. 1379-80.) Massey's counsel subsequently provided those records, which the ALJ referenced in his decision. (Tr. 22.)

The ALJ asked the VE to consider a hypothetical individual with Massey's age, education, and prior relevant work experience. (Tr. 1388.) The ALJ's hypothetical was limited to sedentary work and included postural restrictions, a prohibition against climbing ladders, ropes, or scaffolds, and avoidance of concentrated exposure to extreme cold, heat, and humidity. *Id*. In addition, the hypothetical person was limited to one and two-step tasks. *Id*. The VE testified that such a hypothetical individual could not perform Massey's past relevant work. (Tr. 1389.) However, the VE testified that such a person could perform the jobs of food preparer

7

(200-300), packager (400-450), and some assembly jobs (450-500).[4] (Tr. 1390.) The VE further testified that if the hypothetical individual needed to elevate one leg while seated, there would be no work that such an individual could perform. (Tr. 1391.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[5]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while he or she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The ALJ found that Massey was last insured on September 30, 1990 and was not insured

---

[4] The numbers in parenthesis indicate the number of these positions available, according to the VE, in the local economy. (Tr. 1390.)

[5] The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

on her alleged disability onset date. (Tr. 19.) Therefore, the ALJ found Massey was not eligible for POD or DIB.[6]

A claimant is entitled to receive SSI benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Massey established medically determinable, severe impairments, due to diabetes mellitus, sleep apnea, obesity, congestive heart failure, venous insufficiency and borderline intellectual functioning, but her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Massey is unable to perform her past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Massey is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

---

[6] Massey's brief does not challenge the ALJ's decision with respect to her finding that Massey was ineligible for POD and DIB.

9

record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

Massey claims the ALJ erred by: (1) finding that Massey can perform simple, unskilled work; (2) failing to address the opinions of several non-treating medical sources; and (3) failing to find that Massey needed to elevate her leg while seated.  Each will be discussed in turn.

### *Mental RFC*

The ALJ found that Massey's borderline intellectual functioning limits her mental RFC to simple, unskilled work. (Tr. 23.)  Massey contends that the ALJ's RFC finding is not supported by substantial evidence.  In support of her argument, Massey argues that the opinions of Dr. Davis and Dr. Koricke demonstrate that her limitations are much more restrictive than a mere limitation to simple and unskilled work. (Pl.'s Br. at 11.)  Massey also catalogs the restrictions found by several non-examining sources. *Id.*  Massey, however, fails to articulate

how these opinions undermine the ALJ's finding.[7]

Moreover, to the extent that Massey claims substantial evidence supports a finding of a more restrictive mental RFC than the one actually found by the ALJ, such an argument does not raise an issue that is reviewable by this Court, as it invokes an incorrect standard of review. An ALJ's decision will be affirmed if substantial evidence supports the decision. It is immaterial if substantial evidence also supports a contrary position. *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (Commissioner's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence support's claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when substantial evidence exists to support both the Commissioner and the claimant); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (substantial evidence can exist to support and detract from the ALJ's decision); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion). The substantial evidence standard "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence

---

[7] Generally, Massey refers to limitations contained in Section I ("Summary Conclusions") of the Mental RFC Assessment forms provided by the Agency. The Commissioner notes, however, that the Policy Operations Manual (POMS) utilized by the agency states that "Section I is merely a worksheet ... and does not constitute the [agency doctor's] RFC assessment." (Def.'s Br. at 10-11, *quoting* POMS 24510.060(B)(2)). "It is in [Section III], that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I ..." *Id.*, *quoting* POMS 24510.060(4)(a). Thus, when arguing that the ALJ's mental RFC assessment is erroneous, Massey fails to compare the ALJ's assessment with the actual mental RFC assessments of the physicians/psychologists as contained in Section III of their respective forms.

11

would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) *quoting Mullen*, 800 F.2d at 545.

Thus, a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position and contradicts the finding of the ALJ. Rather, Massey must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion. The ALJ expressly stated that she was giving substantial weight to the opinions of Dr. Nickless and Dr. Gaffrey as contained in Exhibits 9F and 10F. (Tr. 24.) Dr. Nickless found that Massey was unable "to do complex work tasks but is able to understand and carry out 1-2 step work tasks." (Tr. 271.) This opinion supports a finding that Massey can perform simple, unskilled tasks.[8] In addition, Dr. Davis opined that, although Massey was somewhat limited in her ability to think logically and use judgment, her mental limitations are "probably ... a minimal factor in [Massey's] employment prognosis." (Tr. 173.) The ALJ specifically noted that Dr. Davis's findings were consistent with the ALJ's RFC determination. Because there is evidence of record upon which the ALJ could reasonably rely, Massey's argument that the ALJ's mental RFC finding was not supported by substantial evidence is without merit.

*Failure to Explain Weight Given to Medical Opinions*

Massey also argues that the ALJ erred by failing to explain the weight given to the

---

[8] The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). "While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, App. 2 § 202.00(i).

mental RFC opinions of State agency medical and psychological consultants that allegedly supported her claimed limitations, as required by SSR 96-6p. (Pl.'s Br. at 10-12.) Massey cites the following language:

> 1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
>
> 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

(Pl.'s Br. at 10, *quoting* SSR 96-6p.)

The requirement to explain the weight given to an opinion under SSR 96-6p, however, is not as stringent as the requirements concerning treating physicians.[9] SSR 96-6p does not require that such opinions be accorded any specific weight and ALJ's are not bound by such opinions. Moreover, SSR 96-6p only requires the ALJ to *explain* the weight given to such an opinion and does not require that the explanation meet any specific standards. The ALJ considered the opinions of Dr. Davis, Dr. Nickless, and Dr. Gaffrey, found the opinions to be consistent, and concluded that these opinions supported his RFC. (Tr. 23-24.) The ALJ accorded these opinions significant weight. *Id.* Conversely, the ALJ rejected Dr. Koricke's opinion, whose opinion diverged from the other physicians. (Tr. 24.) The ALJ reasonably questioned why Dr. Koricke

---

[9] Generally, the ALJ must give controlling weight to the opinion of a treating physician when such opinion is well-supported by clinical and laboratory findings and "not inconsistent" with other substantial evidence. 20 C.F.R. § 416.927(d); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); SSR 96-2p. Further, the ALJ is required to follow her agency's procedural requirements, which include providing good reasons for the weight given a treating source opinion, and that a failure to do so may result in remand even if substantial evidence supports the ALJ's ultimate conclusion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004).

amended her diagnosis after receiving new information but did not similarly amend her findings. (Tr. 24, 248-53.)

Massey's argument that the ALJ failed to address Dr. Nickless's opinion, dated January 6, 2004, is not supported by the record. The ALJ expressly refers to Exhibits 9F and 10F, which contain Dr. Nickless's opinion. (Tr. 24.) The ALJ explained that she was giving substantial weight to the opinion of Dr. Nickless because it "is compelling as it is supported by the great weight of the evidence of record." (Tr. 24.) As stated above, Dr. Nickless found that Massey was able to understand and carry out 1-2 step work tasks. (Tr. 271.)

Finally, Massey references Dr. Eisel's opinion, dated October 29, 1997, which is designated as Exhibits 2F and 3F. (Tr. 175-87.) The ALJ does not specifically mention this opinion. In his "functional capacity assessment," Dr. Eisel opines that Massey is able to understand and remember simple multi-step instructions, able to respond appropriately to her co-workers and supervisors, and can deal with changes in a routine work setting. (Tr. 177.) The ALJ's failure to address this opinion may be a technical violation of the SSR 96-6p. However, in a decision post-dating SSR 96-6p, the Sixth Circuit found that an ALJ's failure to mention a treating medical source was harmless error where the medical source's opinion was consistent with the ALJ's RFC decision. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001); *cf. Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that claimant must show that the ALJ rejected the treating physicians findings *and* failed to provide good reasons.) Because Dr. Eisel's mental RFC assessment is entirely consistent with the ALJ's finding that Massey could perform simple, unskilled work, the ALJ's failure to explain the weight given to

the opinion is harmless error.[10]

For the foregoing reasons, Massey's argument is without merit.

*Elevated Leg Limitation*

Finally, Massey argues that the ALJ erred by failing to adopt a limitation based on her testimony that she needed to elevate her leg while sitting. (Pl.'s Br. at 12.) Massey cites a Sixth Circuit decision that held "[p]erceptible weight must be given to lay testimony in the record where . . . it is fully supported by the reports of treating physicians." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The ALJ found that there was no support in the record for such a limitation and further found that "no treating or examining physician has endorsed the claimant's allegations of disabling limitations." (Tr. 22.) In her brief, Massey fails to draw the Court's attention to any reports of treating physicians that support her alleged elevated leg limitation. Massey's attempt to remedy this deficiency by pointing out the existence of a number of foot and leg problems corroborated by the record fails to cure the absence of any medical opinion suggesting that her left leg needs to be raised while sitting.

Furthermore, the ALJ cited Massey's activities of daily living and found them to be inconsistent with Massey's allegations of disabling limitations. (Tr. 22-23.) The ALJ also found that inconsistencies between the record and Massey's hearing testimony damaged her credibility. *Id*. Therefore, Massey's assignment of error is not well taken.

---

[10] While the above cited cases concerned the treating physician rule, there is no reason to believe the harmless error exception is inapplicable to an ALJ's failure to explain the weight ascribed to the opinion of a non-treating source, given the fact that the treating physician rule is considerably more stringent than the non-treating source provisions in SSR 96-6p.

15

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Nancy A. Vecchiarelli<br>
U.S. Magistrate Judge

Date: January 30, 2008